LAW OFFICES OF JOSHUA B. KONS, LLC
Joshua B. Kons (SBN. 244977)
939 West North Avenue, Suite 750
Chicago, IL 60642
Tel: (312)-757-2272
Fax: (312)-757-2273
joshuakons@konslaw.com

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO

| | |
|---|---|
| MARY ACEVES,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No.: 2:17-cv-01644-EFB<br><br><br>**PLAINTIFF'S AMENDED MOTION, AND MEMORANDUM IN SUPPORT THEREOF, FOR SUMMARY JUDGMENT AND/OR REMAND** |

     Plaintiff, Mary Aceves, files this Motion and Memorandum in Support Thereof, for Judgement on the Record, seeking reversal of the final decision of Defendant Commissioner denying her application for a period of disability, Social Security Disability Insurance under Title II and Supplemental Security Income under Title XVI of the Social Security Act. In the alternative, Ms. Aceves prays for remand of her claim to the Commissioner for proper determination.

**I.      Statement of the Case**

**a.  Procedural History/Exhaustion of Remedies**

Plaintiff, Mary Aceves, filed for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) with the Social Security Administration on July 9, 2013. (R. 10.) Ms. Aceves's claim was denied at the initial level on January 8, 2014. (*Id*.) and on reconsideration on June 20, 2014. (*Id*.)

A hearing was held on December 8, 2014, with Administrative Law Judge (ALJ) Sara A. Gillis. (*Id*.) Ms. Aceves was represented at the hearing by Fred N. Tabak. (*Id*.). Joy Yoshioka, a vocational expert (VE), testified at the hearing as to the physical and mental skills required to perform various jobs in the national economy. (*Id*.).

ALJ Gillis issued an unfavorable decision on December 29, 2015. (R. 7.) Ms. Aceves appealed the ALJ's decision on February 23, 2016. (R. 100.) The Appeals Council denied Ms. Aceves's Request for Review of Hearing Decision/Order on June 9, 2017. (R. 1). The undersigned filed this action before this Court on August 8, 2017. Complaint, (ECF No. 1).

**b.  Claimant's History**

Ms. Aceves's date of birth is February 11, 1956. (R. 230.) She became too disabled to work as of January 1, 2012, which is her alleged onset date for purposes of applying for disability benefits. (R. 245.) Her age was 55 and 10 months at that time. (*Id*.) As of the date of her application, she was 57.

### c. Overview of Claimant's Disability

Ms. Aceves suffers from memory loss, (R. 466), right shoulder pain, (R. 559), mild arthrosis of the acromioclavicular joint, (R. 533), depression, (R. 645), anxiety, (R. 692), urinary incontinence, (R. 474), headaches, (R. 505), tinnitus, (R. 613), hearing loss, (R. 591), hypertension, (R. 486), sleep apnea, (R. 593), ankle and knee pain, (R. 465); (R. 507) (stemming from her obesity), and GERD, (R. 604), (a non-severe impairment).

### d. Work History

Over the past 15 years, Ms. Aceves has held multiple positions. From 2001 through 2006, Ms. Aceves worked full-time as a custodian. (R. 420.) From 2007 through April 2010 Ms. Aceves worked part-time cleaning homes. (R. 419.) Finally, from November 2008 through December 2008 Ms. Aceves worked full-time as a house keeper cleaning homes. (R. 418.)

### e. Medical Treatment and Evaluation

Ms. Aceves has a long history of medical treatment relative to her disabling impairments. Below please find a review of Ms. Aceves's most recent, relevant medical treatment:

On May 4, 2013, Ms. Aceves was seen for complaints of a headache that had lasted two weeks. (R. 694.) It was noted that Ms. Aceves also had photophobia, hearing loss and constipation. The ER doctor noted that his impression was that Ms. Aceves had anxiety. (R. 692.) Ms. Aceves was given Compazine and Toradol and she was discharged with instructions to follow up with her primary care physician. (R. 695.)

On November 19, 2012, Ms. Aceves was seen at Molina for a follow up appointment. (R. 509.)

On June 24, 2013, Ms. Aceves was seen for a follow up appointment at Molina Medical. (R. 508.) She stated that she did not follow up with a specialist due to insurance problems. Labs were ordered and she was instructed to follow up in four weeks. (*Id.*)

On September 14, 2013, Ms. Aceves was seen at Molina Medical for complains of pain in her shoulders and knees. (R. 507.) The doctor assessed Ms. Aceves with possible arthralgia and instructed Ms. Aceves to follow up with the clinic in two weeks. (*Id.*)

On September 20, 2013, Ms. Aceves was seen at Molina Medical for complains of left sided numbness that had been present for the last 15 months. (R. 505.) It was noted that Ms. Aceves was positive for hearing loss, hypertension, depression, decreased concentration, and headaches. The doctor wanted to rule out a stroke, and would obtain Sutter Delta medical records to see if she had a brain CT. (*Id.*)

On September 25, 2013, Ms. Aceves was seen at Molina Medical for complaints of left sided numbness. (R. 504.) A CT of the brain was ordered. (*Id.*)

On October 11, 2013, Ms. Aceves was seen at Molina Medical for complaints of left sided numbness. (R. 659); (R. 608.) It was noted that Ms. Aceves had previously complained of voices in her head and had no tolerance to listen to anyone. (*Id.*) She was also positive for depression, which she was taking Prozac 20mg. (*Id.*)

On October 29, 2013, Ms. Aceves received an MRI brain without contrast. (R. 634); (R. 609.) The images showed very few tiny subcortical white matter lesions consistent with age related changes or chronic small vessel disease. (*Id.*) There was also posterior fossa and narrow foramen

magnum which crowds the space of the medulla at the craniocervical junction but did not entrap the medulla. (*Id.*)

On November 1, 2013, Ms. Aceves called into Molina medical requesting that her blood pressure medication be adjusted. (R. 633.) Ms. Aceves also stated that she had trouble hearing people and when she talked she heard loud noises. (*Id.*)

November 11, 2013, Ms. Aceves was seen at Molina Medical. (R. 632); (R. 607.) She stated that she could not hear on the phone. (*Id.*) She also stated that people complained that she did not pay attention and she had wrote everything on her calendar. (*Id.*) Ms. Aceves stated that she does not hear noises at night but as soon as she talks with someone, she hears noises in her ears. (*Id.*) The doctor noted that Ms. Aceves could not differentiate two or more noises at the same time and she had decreased concentration. (*Id.*) It was also noted that Ms. Aceves went to an interview and was not able to focus. (*Id.*) Ms. Aceves also complained of left leg numbness, and hypertension. (*Id.*) She was instructed to continue taking her medication. (*Id.*)

On November 24, 2013, Ms. Aceves received a comprehensive psychiatric evaluation with Dr. Lenore Tate Ph.D. (R. 642.) In the CE, Ms. Aceves reported memory loss, ringing/noise in her ears and head, depression, and difficulty concentrating. (R. 641.) She stated that her medications of Atenolol 25mg, Fluoxetine HCL 20mg, and Hydrochlorothiazide 25mg, were not working and that she was troubled by the noises she heard in her head. (R. 643.) Ms. Aceves was assessed with the following axis determinations: Axis I depressive disorder, not otherwise specified bereavement; Axis II, none; Axis III, defer to appropriate specialist; Axis IV, psychological stressors during the past year (unemployment, inadequate finances, death of spouse); Axis V, GAF

of 60. (R. 646.) Dr. Tate found that Ms. Aceves was mildly impaired in her ability to do detailed and complex instructions, mildly impaired in her ability to maintain concentration, attention, persistence, and pace. (*Id*.) She also found that Ms. Aceves was mildly impaired in her ability to maintain regular attendance in the workplace and perform work activities on a consistent basis as well as mildly impaired in her ability to perform work activities without special or additional supervision. (*Id*.)

On February 26, 2014, Ms. Aceves was seen at Folsom Office for complains of hearing loss. (R. 612.) Ms. Aceves told the doctor that she was referred by herself. (*Id*.) Review of her systems indicated that she had dizziness, headaches, hearing loss, ear pain tinnitus, snoring and sinusitis. (*Id*.) The doctor assessed Ms. Aceves with ear ringing, cerumen impaction, as well as sleep apnea. (R. 613.)

On February 26, 2014, Ms. Aceves was seen by Dr. James Yee M.D. who opined that Ms. Aceves had hearing loss which could be helped by hearing aid amplification of binaural behind-the-ear and in-the-ear hearing aids. (R. 591.)

On March 10, 2014, Ms. Aceves was seen at Molina Medical for complaints of chest pain. (R. 604.) Ms. Aceves stated that she felt like she could not breathe. (*Id*.) She also stated that her left leg numbness had improved. (*Id*.) It was noted that Ms. Aceves was taking Flouzatine 20mg which decreased her tolerance for crowds and activity. (*Id*.) Ms. Aceves was assessed with GERD which was giving her chest pain. (*Id*.)

On April 2, 2014, Ms. Aceves was seen by Dr. Yee for complaints of numbness, hearing loss, and facial pain. (R. 592.) The doctor assessed Ms. Aceves with tinnitus, hearing loss, rhinitis,

sleep apnea, and facial pain. (R. 593.) A microscope examination of both ears was ordered as well as a CT scan. (*Id*.)

On April 19, 2014, Ms. Aceves was seen for an x-ray of the right shoulder. (R. 537.) The images indicated a displaced somewhat communicated fracture of the proximal humerus. *Id*.

On April 26, 2014, Ms. Aceves was seen at Summit Orthopedic Specialists for complaints of right arm pain. (R. 556.) X-rays indicated minimally displaced comminuted proximal humerus fx involving surgical neck and greater tuberosity. (R. 559.) The doctor assessed Ms. Aceves with arm pain, right proximal fracture of the humerus, and right surgical neck fx closed humerus. (*Id*.)

On May 5, 2014, Ms. Aceves was seen at Summit Orthopedic Specialists for complaints of right arm pain. (R. 576.) She stated that she had fallen and she had x-rays done which showed a fracture. *Id*. Images were reviewed which showed minimally displaced comminuted proximal humerus fx involving surgical neck and greater tuberosity. (R. 579.) Ms. Aceves was assessed with arm pain, fracture of the right proximal humerus, and fx closed humerus of the right surgical neck. *Id*. Ms. Aceves was instructed to stay in a sling and to return in three weeks for repeat x-rays. (R. 580.)

On May 21, 2014, Ms. Aceves was seen at Summit Orthopedic Specialists for a follow up appointment regarding her right arm fracture. (R. 551.) Ms. Aceves stated that she was unable to hold objects or use her arm at all. (*Id*.) X-rays were taken which showed consolidating surgical neck and proximal humerus fx. (*Id*.) The doctor assessed Ms. Aceves with arm pain and a right proximal humerus fracture as well as fx surgical neck closed humerus. (R. 554.) Ms. Aceves was

reminded to remain non-weight bearing to the right arm and was instructed to return for a repeat evaluation in 4 weeks. (R. 555.)

On June 5, 2014, and x-ray of the left knee was taken which showed no acute bony injury. (R. 535.)

On July 18, 2014, Ms. Aceves was seen at Summit Orthapedic Specialists for a follow up appointment regarding her right arm fracture. (R. 547.) Ms. Aceves stated that she still had pain and was not able to lift her right arm. (*Id*.) She stated that she worked on her at home exercised to help build her strength however she remained in a sling. (*Id*.) The doctor assessed Ms. Aceves with proximal right humerus fracture. (R. 550.) She was instructed to perform at-home exercises and it was noted that Ms. Aceves needed formal physical therapy. (*Id*.)

On July 24, 2014, it was noted that Ms. Aceves received a hearing aid, but they were still in need of adjustment. (R. 576.)

On September 15, 2014, Ms. Aceves was seen at Summit Orthopedic Specialists for a follow up appointment regarding her right arm fracture. (R. 542.) Ms. Aceves reported no change in her symptoms since her last visits. (*Id*.) She complained of stiffness and tingling. (*Id*.) She also stated that she wasn't able to attend physical therapy due to a referral issue. (*Id*.) A right upper extremity test indicated minimal swelling with ecchymosis about proximal humerus. (R. 545.) Her ROM to AROM was 60 degrees to flexion 30 ER and IR to greater troch. (*Id*.) The doctor assessed Ms. Aceves with Fracture of the right proximal humerus. (*Id*.) Ms. Aceves was referred to physical therapy and she was instructed to follow up with the clinic after she completed physical therapy. (R. 546.)

On January 18, 2015, Ms. Aceves was assessed with hypertension controlled by current medication, high triglycerides and elevated and elevated liver function tests as well as H. pyiori infection. (R. 586.) The doctor discussed a low cholesterol diet, an acute hepatitis panel was ordered and she was instructed to take Flagyl 500mg, Biaxin 50mg and Prilosec 20mg for her infection. (*Id*.)

On May 12, 2015, Ms. Aceves was assessed with stress incontinence. (R. 476.)

On June 2, 2015, Ms. Aceves was seen at Molina for multiple complaints. (R. 472.) She stated that she had not received her incontinence supplies that she had previously ordered. Ms. Aceves was assessed with elevated liver function tests, occult blood in stools, urinalysis manual, urine incontinence as well as obesity. (R. 474.)

Only July 14, 2015, Ms. Aceves was seen at Molina Medical for multiple complaints. (R. 468.) She stated that she had anal irritation, left ankle pain, left thumb pain and nodule. *Id*. Ms. Aceves was prescribed hydrocortisone suppository, docusate sodium 100mg and referred to plastic surgery as well as radiology. (*Id*.) Lastly, she was given an ankle gauntlet. (R. 470.)

On July 15, 2015, Ms. Aceves received an x-ray of her left ankle. (R. 534.) The images indicated no visible fracture, soft tissue swelling and a calcaneal spur. (*Id*.)

On August 14, 2015, Ms. Aceves was seen at Molina Medical for complaints of ankle pain and knee weakness. (R. 465.) She stated that she still had right shoulder pain since her fracture. (*Id*.) Physical examination showed that she was positive for right shoulder and left knee pain. (*Id*.) Psychiatric/behavioral examination showed Ms. Aceves was positive for memory loss. (R. 466.) Ms. Aceves was assessed with; abnormal liver function, which would be rechecked in three

months; residual hemorrhoidal skin tags; ankle sprain, which she was referred to physical therapy for; and right shoulder pain, which she was referred to radiology for. (*Id.*) Lastly, she was assessed with  disturbance and it was noted that she was to see MMSE at the next visit. (R. 467.)

On august 20, 2015, Ms. Aceves received an x-ray of the right shoulder. (R. 533.) The images indicated mild arthrosis of the acromioclavicular joint. (*Id.*)

**f.   December 8, 2015, Administrative Law Judge Hearing**

Ms. Aceves and her representative appeared before ALJ Gillis on December 8, 2015, to determine her entitlement to benefits. (R. 10.)  Ms. Aceves testified at the hearing.

ALJ Gillis found that Ms. Aceves had the following severe impairments: bilateral hearing loss; hypertension; and obesity. (R. 13.) The ALJ found that Ms. Aceves also alleges impairments that are not sever, including: right arm pain; arthrosis of the acromioclavicular joint; depression; and anxiety disorder. *Id.*

ALJ Gillis considered listings 2.07 (disturbance of labyrinthine-vestibular function), 2)08 (hearing loss not treated with Cochlear implantation), and 4.00H1 (hypertension), but found that Ms. Aceves's impairments or combination of impairments do not meet or medically equal the severity of any listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 14-15.)

ALJ Gillis found that Ms. Aceves had the residual functional capacity to perform a full range of work at all exertional levels but had nonexertional limitations. (R. 15.) Due to these limitations, the ALJ determined Ms. Aceves must avoid; concentrated exposure to noise and hazards including heights and dangerous machinery, and work in a manufacturing environment. (*Id.*) The ALJ also found that Ms. Aceves could work in an office setting, but could only occasionally interact with the public due to her hearing limitations. (*Id.*)

ALJ Gillis found that Ms. Aceves had past relevant work as a cleaner, as she had performed in the position within the last fifteen years, for more than thirty days and earned above the minimum substantial gainful activity threshold. (R. 17.)

Ms. Aceves was ultimately found to be not disabled, being deemed capable of working as a cleaner, as generally performed in the past. (R. 18.)

## II.   Standard of Review

The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error.

*Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098.) Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## III.   Five Step Sequential Evaluation

There is five step sequential evaluation used by ALJ's to analyze claims before the Social Security Administration. 20 C.F.(R. § 404.)1520. If an ALJ cannot proceed to the next step in the sequential evaluation because any requirement of a particular step cannot be met, the ALJ must deny the claimant. 20 C.F.R. § 404.1520(4).

At step one, ALJ must determine whether the claimant is engaging in substantial gainful activity (SGA). 20 C.F.R. § 404.1520(b). SGA is defined as "doing significant physical or mental activities . . . even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is defined as "work activity you do for pay or profit." 20 C.F.R. § 404.1572(b). Activities such as taking care of oneself, cleaning your home, or attending school are not considered to be SGA. 20 C.F.R. § 404.1572(c). Social Security will typically determine if work activity is at the level of SGA by looking at a claimant's gross earnings by month. 20 C.F.R. § 404.1574(1); *Substantial Gainful Activity*, Social Security Administration (November 1, 2015, 2:00 p.m.), www.socialsecurity.gov/OACT/COLA/sga.html.

At step two ALJ is required to determine which impairments, if any, are severe. 20 C.F.R. § 404.1520(c). Severe impairments are defined as a health condition that imposes "more than a minimal effect on the ability to do basic work activities." Social Security Regulation (S.S.(R.) 85-28, 96-3p, and 96-4p. An impairment must also have lasted twelve months, or would be expected to last twelve months, or result in death, to be considered severe. S.S.R. 82-52.)

At step three, ALJ must evaluate if any of the claimant's impairments, or combination of impairments, "meet" or "equal" the requirements of an impairment listed in 20 C.F.R. Part 404,

20 C.F.R. § 404.1526.) To "meet" a listing, the claimant must have a condition described by the listings. Program Operations Manual System (POMS) 22001.)020; 20 C.F. R. § 404.1525; 20 C.F.R. § 404.1526; 20 C.F.R. § 404. 416.925.   The condition must exactly meet the criteria described in the listing and the condition must also meet the durational requirement of twelve months. *Id*. To "equal" a listing, the claimant's condition must be "at least equal in severity and duration to the criteria of any listed impairment." *Id*.   It is not fatal to the sequential evaluation if a claimant does not "meet" or "equal" a listing. 20 C.F.R. § 404.1520(e). An ALJ must find a claimant disabled under the listings or, in the alternative, under the medical and vocational guidelines described in step four and five below.  20 C.F.R. § 404.1520.)

Before proceeding to step four, ALJ must determine the claimant's residual functional capacity (RFC). 20 C.F. R. § 404.1520(e). The RFC is the most a claimant can do, both physically and mentally, given his or her health condition(s). *Id*.

At step four ALJ must if the claimant would be able to perform his or her past relevant work (PRW) based on the RFC. 20 C.F. R. § 404.1520(f). Past relevant work is generally defined as a job or work activity that the claimant performed within past fifteen years which provided the claimant with work skills and experience to be able to return to that previous job. S.S.R. 82-62. An ALJ may request testimony from a VE to clarify and resolve any issues at step four. S.S.R. 00-4p.

Lastly, at step five, ALJ must evaluate if the claimant would be able to perform any other work in the economy based on his or her RFC. 20 C.F.R. § 404. 1520(g). Of note, nothing in step five of the sequential evaluation requires an ALJ to consider whether or not the claimant could find or get a job, rather, the ALJ must decide if the claimant is physically and mentally capable

of performing a job in the national economy based on his her education and past work experience. *Social Security Administration,* How We Decide if You Are Disabled (November 4, 2015, 12:46 pm).  Like in step four, an ALJ may request testimony from a VE to clarify and resolve any issues at step five. S.S.R. 00-4p.

Also, when a claimant is over the age of fifty, Appendix 2 to Subpart P of Part 404 – Medical Vocational Guidelines could be applicable at step four and five. Specifically, tables one, two, and three describe various situations in which a finding of disability is directed based on the claimant's age, education level, and previous work experience.

## IV.   Statement of Errors:

## a.  The ALJ improperly found Ms. Aceves's mental conditions and right shoulder condition to be "non-severe."

In determining whether Ms. Aceves's mental conditions were severe, the ALJ found that her "medically determinable mental impairments of depression and anxiety disorder considered singly and in combination, do not cause more than minimal limitation in the claimants ability to perform basic mental work activities and are therefore nonsevere." (R. 13.) This determination is flawed for two reasons: The ALJ failed to consider Ms. Aceves's memory loss and decreased concentration as medically determinable mental impairments (an impairment established by objective medical evidence from an acceptable medical source; 20 CFR 416.921), to be considered in combination with Ms. Aceves's depression and anxiety; and then, in conducting her 12.00C evaluation, the ALJ left out vital medical information that would have been favorable to Ms. Aceves's case.

In determining severity, under SSR 96-3p an impairment is severe "if it significantly limits an individual's physical or mental abilities to do basic work activities" and is only considered "not severe" if it is "a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Ms. Aceves medically determinable impairments therefore should have been considered in combination with each other to make this determination. The ALJ, however, only considered if Ms. Aceves's depression and anxiety rose to a level of sever even though medical evidence showed that Ms. Aceves suffers from memory loss and decreased concentration. (R. 466- 467); (R. 505); (R. 607); (R. 632; (R. 646.) After deciding that depression and anxiety would be the only conditions to be used in determining whether Ms. Aceves's mental impairment was severe, the ALJ proceeded to make a 12.00C evaluation. (R. 13-14.)

The evaluation process to determine severity of mental impairment set forth in section 12.00C of the Listing of Impairments, 20 CFR, Part 404, Subpart P, Appendix 1, considers four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. (R. 13-14.) Evidence to be considered in making this determination includes, but is not limited to: reported symptoms; medical, psychiatric, and psychological history; results of physical or mental status examinations, structured clinical interviews, or other clinical findings; and observations and descriptions of how the claimant is functioning during examinations and therapy. (*Id.*) The issue here is that the ALJ seemed to have made her decision based almost exclusively off of statements made by Aceves and the only medical opinions that were given deference were those that were in

opposition to Ms. Aceves claims; giving no credence to medical evidence that would have helped substantiate Ms. Aceves's claims of mental impairment. (R. 13-14.)

The ALJ ultimately found that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitations in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area," Ms. Aceves's mental impairments are nonsevere. (R. 14.) Had the ALJ considered memory loss and decreased concentration medically determinable mental impairments, and granted the appropriate weight to the evidence on record in her 12.00C evaluation, Ms. Aceves's mental impairments would have been considered severe; the combination of her conditions would significantly limit her ability to do basic work activities.

Similar to the mental impairments, the ALJ found the shoulder condition to be non-severe.  (R. 13.)  The ALJ's reasoning for this was that the "the absence of diagnostic findings or continuing treatment, suggest that this impairment does not cause any functional limitations" and "the claimant's impairment also does not satisfy the twelve-month continuous duration requirement." (Id.)  These finding are in error for two reasons: (1) the ALJ failed to consider that Ms. Aceves continued to have complaints of shoulder pain in August of 2015, which was sixteen months after her initial fracture, well beyond the twelve-month requirement (R. 465); and (2) the ALJ failed to consider whether there was an acceptable reason that the claimant did not have ongoing treatment of the right shoulder.  SSR 16-3p states that Social Security "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment

consistent with the degree of his or her complaints." The ALJ's decision is silent on this issue, which is in clear violation of SSR 16-3p.

**b. The ALJ made an improper RFC determination.**

In her decision, the ALJ found that Ms. Aceves has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but has some nonexertional limitations. (R. 14.) The ALJ committed an error in making this decision in that she did not fully consider all of Ms. Aceves's medical conditions or the medical record. Had she done so, an appropriate RFC determination would have been made and there would have been more exertional allowances based off of the record.

In making her finding, the ALJ lists Ms. Aceves alleged symptoms as; anxiety, depression, high blood pressure, stroke, right side numbness, severe tinnitus, severe hearing difficulties, and has difficulty concentrating, remembering, and sleeping. Though the ALJ used boilerplate language in explaining that she "considered all symptoms and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," the list of alleged symptoms is missing, stress/urinary incontinence, knee pain, ankle pain, and right shoulder issues (pain, mild arthrosis of the acromioclavicular joint, and history of fracture).

Regarding stress/urinary incontinence, though there are multiple medical assessments that state Ms. Aceves suffers from such, (R. 474; (R. 476, this condition is completely left out of the decision made by the ALJ in its entirety. This oversight effected making a proper determination because it is a condition that would likely cause Ms. Aceves to be off task at least 10% of the day and that should have been taken into account. Additionally, stress incontinence can be brought

on by lifting something heavy. Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/urinary-incontinence/symptoms-causes/syc-20352808.) This should have had an effect on the ALJ's determination that Ms. Aceves could perform a full range of work at all exertional levels, (R. 15), being that exertional limitations include lifting. See SSR 96-4p.

Regarding Ms. Aceves's other overlooked physical impairments, the absence of her shoulder issues from the list of symptoms may stem from the fact that in section five of her decision, the ALJ determined that the impairment does not cause any functional limitations and does not meet the twelve-month continuous duration requirement. (R. 13.) Even if both of these statements were true, which is debatable because there is medical history of shoulder issues from September 2013 to August 2015, the fact that Ms. Aceves suffers from shoulder pain, which is subjective, should have been factored into the RFC decision along with her ankle and knee pain unless there was affirmative evidence to the contrary; "If there is medical evidence establishing an objective basis for some degree of ….. related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the [ ] reason for rejecting the claimant's testimony must be "clear and convincing," *Dodrill v. Shalala* (9th Cir. 1993) 12 F.3d 915, 918 (Citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). There is no reason given for the shoulder issues, the knee pain, or the ankle pain, not being considered in Ms. Aceves's RFC, nor is there any direct mention of them at all; there is only the indirect State Agency's opinion that the claimant's physical impairments are non-severe, (R. 16), and the ALJ's statement that caring for others can be physically demanding, (R. 17.) This was an error and had the shoulder issues and the ankle and knee pain been considered, the RFC would have reflected this in the form of

exertional limitations; limitations effecting, among other things, the ability to stand, walk, lift, carry, push, and pull. See SSR 96-4.

The error committed by the ALJ led to an improper RFC which proceeded to affect the determination as to whether Ms. Aceves could perform her past work, or any work for that matter.

## V.    Statement of Relief

Based on the above cited reasons, Ms. Aceves respectfully requests that you find the ALJ's decision to be unsupported by substantial evidence and prays you make a judgement on the record in favor of Ms. Aceves.  Ms. Aceves should have been found to be limited to light work and because of her age (Advanced Age) and education (11th Grade), this would result in meeting the requirement of a GRID listing 202.01 and she should be found disabled. Appendix 2 to Subpart P of Part 404—Medical-Vocational Guidelines.  In the alternative, we request that her claim be remanded for further proceedings with the Social Security Administration under 20 U.S.C. § 405(g).

Dated: January 16, 2018

/s/ Joshua B. Kons
LAW OFFICES OF JOSHUA B. KONS, LLC
Joshua B. Kons
939 West North Avenue, Suite 750
Chicago, IL 60642
Tel: (312)-757-2272
Fax: (312)-757-2273

joshuakons@konslaw.com