UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ACEVES,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>    Defendant. | No. 2:17-cv-1644-EFB<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and disabled widow's benefits under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 18, 19. For the reasons discussed below, plaintiff's motion for summary judgment is denied and the Commissioner's cross-motion is granted.

I.     Background

Plaintiff filed applications for a period of disability, DIB, and widow's benefits, alleging that she had been disabled since January 1, 2012. Administrative Record ("AR") 172-188. Plaintiff's applications were denied initially and upon reconsideration. *Id.* at 99-102, 106-18. On December 8, 2015, a hearing was held before administrative law judge ("ALJ") Sara A. Gillis.

*Id.* at 23-43. Plaintiff was represented by counsel at the hearing, at which she and a vocational expert ("VE") testified. *Id.*

On December 29, 2015, the ALJ issued an amended decision finding that plaintiff was not disabled under sections 216(i), 223(d), 202(e), and 223(d) of the Act.[1] *Id*. at 10-18. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

2. It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

3. The prescribed period ends on January 31, 2016.

4. The claimant has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).

5. The claimant has the following severe impairments: bilateral hearing loss, hypertension and obesity (20 CFR 404.1520(c)).

\* \* \*

6. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

7. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant must avoid concentrated exposure to noise and hazards including heights and dangerous machinery, must avoid work in a manufacturing environment but can work in an office setting and can occasionally interact with the public due to hearing limitations.

\* \* \*

8. The claimant is capable of performing past relevant work as a cleaner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

\* \* \*

9. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2012, through the date of this decision (20 CFR 404.1520(f)).

*Id.* at 12-18.

Plaintiff's request for Appeals Council review was denied on June 9, 2017, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-5.

II. Legal Standards

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. Analysis

Plaintiff argues that the ALJ erred by (1) finding that she did not have severe mental and right shoulder impairments and (2) failing to consider all of her impairments in assessing her residual functional capacity ("RFC"). ECF No. 18 at 14-19.

A. Step-Two

1. Relevant Legal Standards

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were not taken into account. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At step-two the claimant has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show that his or her impairments are severe and are expected to last for a continuous period of twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir.2005); *see also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do

4

basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p).

When the ALJ determines that a claimant has at least one severe impairment, he must consider all impairments, including non-severe impairments, at all subsequent steps of the sequential evaluation. *Smolen*, 80 F.3d at 1290; *see also Burch v. Barnhart*, 400 F.3d 676, 682-82 (9th Cir. 2005) (ALJ's failure to find claimant's obesity severe at step two was harmless error where it was considered in determining claimant's RFC).

### 2. Mental Impairments

In her decision, the ALJ found that plaintiff's shoulder impairment, depression, and anxiety disorder were not severe impairments. AR 13-14. Plaintiff argues that in assessing her mental impairments, the ALJ erred by failing to consider her memory loss and decreased concentration as medically determinable impairments. ECF No. 18 at 14-16. Plaintiff further argues that the ALJ erred in failing to consider "vital medical information" related to her memory and concentration. *Id*. at 14-15.

The Commissioner argues that under her Social Security Rulings that memory loss and decreased concentration are "symptoms" not "medically determinable impairments." *See* SSR 96-4p ("A 'symptom' is not a 'medically determinable physical or mental impairment' and no symptoms by itself can establish the existence of such an impairment.") (rescinded June 14, 2018 as duplicative of SSR 16-3p); SSR 16-3p (a claimant must submit "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the claimant's] symptoms."). Regardless of how the memory loss and decreased concentration are labeled, plaintiff has not shown that the ALJ failed to consider them. The ALJ considered plaintiff's contentions as to each, and also addressed the medical records pertaining to each.

/////
/////
/////
/////

Plaintiff contends that the ALJ failed to consider four different records showing that plaintiff suffers from memory loss and decreased concentration. ECF No. 18 at 15 (citing AR 304-05, 312, 330, 389-90, 428).[2] The first document is a September 20, 2013 treatment record, which notes plaintiff's subjective complaints of decreased concentration. AR at 471. The second is a November 11, 2013 medical record documenting plaintiff's reports of having difficulty focusing and paying attention, and needed to write things down. AR 354, 372.[3] Plaintiff also cites an August 14, 2015 treatment record, which notes plaintiff's report of dealing with forgetfulness during the prior year and that she is "Positive for memory loss." AR 430. However, this last treatment note indicates that plaintiff only received a physical examination, and that a mental examination would be conducted at her next visit appointment. *Id*. at 431-32.

Lastly, plaintiff cites to records from a comprehensive psychiatric evaluation, which was conducted by psychologist Leonore Tate, Ph.D. AR 342-47. During that exam, plaintiff reported memory loss and difficulty concentrating. *Id*. at 346. However, Dr. Tate found that plaintiff's thought process was coherent and organized, her memory was adequate for both recent and remote events, she was able to maintain attention and concentration, and her insight was fair. *Id*. at 344-46. Dr. Tate opined that plaintiff had only mild restrictions in understanding, remembering, and carrying out detailed and complex instructions; maintaining concentration, attention, persistence, and pace; maintaining regular attendance in the workplace and performing work activities on a consistent basis; and performing work activities without special or additional supervision. *Id*. at 347. She further opined that plaintiff had no restrictions with respect to understanding, remembering, and carrying out simple job instructions; relating to coworkers and the public; associating with day-to-day work activities including attendance and safety; and accepting instructions from supervisors. *Id*.

---

[2] Virtually every citation to the administrative record contained in plaintiff's amended motion for summary judgment is incorrect. For instance, plaintiff cites to AR 312 and 330 in discussing a plaintiff's treatment from Molina Medical center in November 2013. Page 312 of the record contains a posthospital treatment record from Sutter General Hospital dated May 2013, while page 330 contains a treatment record from September 2013.

[3] Pages 354 and 371 of the administrative record are the same treatment note.

6

The three treatment notes cited by plaintiff are devoid of any objective medical findings supporting plaintiff's contention that she has significant difficulty with concentration and memory. Instead, these records merely document plaintiff's subjective complaints, which the ALJ found to be not fully credible.[4] As for Dr. Tate's consultative examination, rather than supporting plaintiff's contention, it indicates that plaintiff's concentration and memory were not impaired.

Furthermore, the medical opinion evidence of record supports the ALJ's finding that plaintiff did not have severe mental impairments. As discussed above, Dr. Tate opined that plaintiff had no more than mild restrictions in the ability to perform work-related activities, specifically noted that plaintiff's memory was adequate and she had the ability to maintain concentration. *Id*. at 345-47. Additionally, Dr. Evelyn Adamo and Dr. Richard Waranch, both state agency non-examining psychologists, reviewed plaintiff's medical records and opined that she did not have a severe mental impairment. *Id*. at 48-49, 57-58, 75, 90. These opinions constitute substantial evidence supporting the ALJ's finding. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.2001) (an examining physician's opinion alone constitutes substantial evidence where it rests on the physician's own independent examination); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) ("[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."). *see also* SSR 96-6p ("State agency medical and psychological consultants are highly qualified physicians and psychologist who are experts in the evaluation of the medical issues in disability claims."); 20 C.F.R. § 404.1513(c) (findings by state agency physicians constitute proper evidence from non-examining sources); 20 C.F.R. §§ 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

        3.      <u>Shoulder Impairments</u>

Plaintiff also contends that the ALJ erred in finding that her shoulder condition was non-severe. ECF No. 18 at 16. In her decision, the ALJ noted that an x-ray revealed a minimally

---

[4] Plaintiff does not challenge the ALJ's credibility determination.

7

displaced comminute proximal humerus fracture. AR 13. She then observed that subsequent examinations contained minimal objective findings, including no muscle atrophy or joint effusion, no tenderness to palpation, normal grip strength, full range of motion of the elbow and wrist, and only minimal swelling with eccymosis. *Id*. She also noted that a subsequent x-ray of plaintiff's right shoulder showed only minimal arthrosis of the acromioclavicular joint. The ALJ concluded that these minimal diagnostic findings, as well as the absence of further treatment, suggested that plaintiff's shoulder impairment did not cause any functional limitations. *Id*. Further, the ALJ also found that it was not severe because the record failed to establish that plaintiff's shoulder impairment satisfied the twelve-month continuous duration requirement. *Id*.; *see* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement).

Plaintiff claims that the ALJ erred by (1) failing to consider that plaintiff continued to complain of shoulder pain in August 2015, which was more than twelve months after she sustained the fracture, and (2) failing to consider whether there was an acceptable reason for plaintiff not receiving ongoing treatment of her right shoulder. ECF No. 18 at 16. Neither of plaintiff's arguments are persuasive.

First, the medical evidence does not demonstrate that plaintiff continuously experienced shoulder problems for at least twelve months. In April 2014, plaintiff was seen by an orthopedist for complaints of right arm pain after she fell. AR 416-20. An x-ray showed a minimally displaced comminuted proximal humerus fracture. *Id*. at 398, 502. The following month, plaintiff stated that she continued to have severe pain in her shoulder. *Id*. at 411. She was prescribed physical therapy, instructed to perform range of motion exercises, and told to wean the use of her arm sling. *Id*. at 415. Treatment notes from July 2014, reflect that plaintiff continued to have pain and was not able to lift her arm. *Id*. at 407. She had not undergone physical therapy, but reported improvement with home exercise program. *Id*. at 410. At a follow up in September 2014, plaintiff reported no change in her symptoms and complained of stiffness and tingling. *Id*. at 402. On exam, there was no sign of intrinsic muscle atrophy or joint effusion. *Id*. at 405. She

had full range of motion in her elbow, wrist, and digital joints, and normal grip strength and motor tone. *Id*. There was no tenderness to palpation and only minimal swelling about the proximal humerus. *Id*. Plaintiff indicated she was unable to obtain physical therapy due to a referral issue, so her physician gave her another referral and told her to follow up once she had completed physical therapy. *Id*. at 402, 406. The record, however, does not reflect further treatment from her orthopedist, nor do treatment records reflect that she completed physical therapy.[5]

Furthermore, subsequent treatment notes reflect treatment for other conditions and documenting few issues related to plaintiff's shoulder. Plaintiff was seen by her primary care provider in early January 2015 for complaints of heartburn and dermatitis. *Id*. at 454-55. She was again approximately two weeks later for follow up labs, at which time she continued to complain of heartburn. *Id*. at 450-51. In February 2015, plaintiff received treatment for a rash on her hands and right foot. *Id*. at 447. Treatment notes from April and May of 2015 reflect treatment for a cough. *Id*. at 441, 444. In July 2015, plaintiff was seen for left ankle pain, left thumb pain, and gastrointestinal issues. *Id*. at 433. But none of these records reflect medical treatment for plaintiff's shoulder or complaints of shoulder pain.

However, on August 14, 2015—nearly a year after her last orthopedic evaluation—plaintiff complained of right shoulder pain. *Id*. at 430. Despite no complaints of shoulder issues during the prior ten months, plaintiff claimed that she had been experiencing shoulder pain since the time of her fracture. *Id*. On exam, plaintiff exhibited normal range of motion and had no tenderness in her right shoulder. *Id*. at 431. She was referred to radiology for an x-ray, which showing only mild arthrosis of the acromioclavicular joint. *Id*. at 498. Significantly, plaintiff's subsequent medical records do not contain complaints of pain in plaintiff's right upper extremity. *Id*. at 426-27.

/////

---

[5] Plaintiff testified at her hearing that she went to physical therapy, but there are no medical records supporting that claim. The record does reflect that plaintiff's counsel sent a request for medical records to Natomas Physical Therapy, but their response stated that plaintiff was not one of their patients. AR 421-23.

Based on these records, the ALJ reasonably concluded that plaintiff's shoulder impairment did not meet the twelve-month durational requirement. Plaintiff fractured her proximal humerus in April 2014, but only received treatment for this condition through September 2014. Although plaintiff claimed in August 2015 that she had been suffering shoulder pain since sustaining the fracture, that statement is undermined by medical records from the prior ten months that document no issues of treatment related to plaintiff's shoulder.

The argument that the ALJ erred by failing "to consider whether there was an acceptable reason that the claimant did not have ongoing treatment of the right shoulder," ECF No. 18 at 16, simply lacks merit. Despite her critique, plaintiff does not offer any explanation for her failure to obtain further treatment for her shoulder. Furthermore, there is nothing in the record suggesting plaintiff was unable to obtain treatment for her shoulder after September 2014. Indeed, plaintiff continued to obtain treatment for a number of different medical issues after September 2014, which strongly suggests plaintiff could have sought treatment for her shoulder if such treatment was indeed necessary.

In sum, although plaintiff's shoulder condition was undoubtedly severe immediately after the facture and for some months thereafter, the severity did not meet the 12 month duration requirement.

Accordingly, plaintiff has failed to show that the ALJ erred in finding her shoulder impairment was non-severe.

B. RFC Determination

Plaintiff also argues that the ALJ erred by failing to consider all medical conditions in assessing her RFC. ECF No. 18 at 17-19. Specifically, plaintiff contends that the ALJ failed to consider her stress/urinary incontinence, knee pain, ankle pain, and right shoulder issues. *Id*.

In determining whether a claimant is disabled, the ALJ is required to consider all the evidence of record. 20 C.F.R. § 404.1520(a)(3); *see Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) ("In determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medical determinable impairments, including those that are not severe."); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (if one severe impairment exists, all medically

determinable impairments must be considered in the remaining steps of the sequential evaluation). Although the ALJ is not required to discuss every piece of evidence in the record, the ALJ "must explain why probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quotations omitted); *see Howard ex rel. v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ is not required to "discuss evidence that is neither significant nor probative.").

With respect to her contention that the ALJ failed to consider her stress/urinary incontinence, plaintiff cites to only two treatment records reflecting issues with incontinence. ECF No. 18 at 9, 17. On May 12, 2015, plaintiff reported losing urine when coughing and sneezing and was diagnosed with stress incontinence. AR 441-42. Less than one month later, plaintiff reported losing urine with and without straining and was diagnosed with urine incontinence. *Id*. at 437. Although not cited by plaintiff, an April 2015 treatment record also notes urine incontinence with cough. *Id*. at 444. While plaintiff correctly notes that the ALJ did not address this evidence, she was under no obligation to do so. The evidence of incontinence was limited to a couple months, with no indication that plaintiff had ongoing trouble with incontinence. Nor is there any evidence that her incontinence would impact her ability to work. Consequently, the ALJ was not obligated to address this evidence. *Coleman v. Colvin*, 524 Fed. Appx. 325, 326 (9th Cir. 2013) ("[T]he ALJ did not err by failing to specifically address Ms. Coleman's diagnoses of sleep disorder and chronic pain—an ALJ need only explain why 'significant probative evidence has been rejected'").

Similarly, plaintiff contends that the ALJ impermissibly failed to consider evidence documenting knee and ankle pain. ECF No. 18 at 18. Medical records addressing these issues are limited. A September 14, 2013 treatment note reflects that plaintiff complained of knee and shoulder pain, and was diagnosed with possible arthralgia. AR 330. However, plaintiff's next report of knee pain was in June 2014. *Id*. at 462. X-rays of the knees were performed, which were unremarkable. *Id*. at 500-01.

More than a year later, in July 2015, plaintiff complained of ankle pain, which she claimed to have been experiencing "on and off for years," and was prescribed an ankle gauntlet.

*Id*. at 433. Plaintiff exhibited joint pain in her left ankle, but maintained a full range of motion and there was no edema or deformity. *Id*. at 434. She was diagnosed with ankle pain and prescribed an ankle gauntlet. The treatment note, however, does not reflect any complaints of knee pain. *Id*. at 433-35. X-rays of plaintiff's ankle taken the following day found that there was no visible fracture or dislocation, but soft tissue swelling and a small calcancal spur were noted. *Id*. at 499. The following month, plaintiff was seen for ankle pain and complaints that her knee felt "weak." *Id*. at 430. Plaintiff described her problem as chronic, but noted that it had been worse after she "stepped wrong" a month earlier. *Id*. Plaintiff exhibited a decreased range of motion in her left knee, but there was no swelling, effusion, or deformity. *Id*. at 431. Plaintiff was diagnosed with an ankle sprain and referred to physical therapy. *Id*.

Like the evidence of plaintiff's incontinence, medical records related to plaintiff's knee and ankle problems are minimal and fail to document any significant impairment that would impact plaintiff's ability to work for a twelve-month period. Instead, treatment records demonstrate isolated complaints of knee pain in 2013 and 2014, and treatment for an ankle sprain in 2015. The record does not show that these impairments were continuous for twelve months or that they significantly impacted plaintiff's ability to work.

Despite plaintiff's current argument, she apparently didn't believe at the time of her administrative proceedings that evidence related to her knee and ankle was probative. She did not identify knee or ankle problems as one her physical impairments at the time she applied for benefits (*id*. at 202), nor did she complain of these issues in her functional reports (*id*. at 245-53, 269-77). Her counsel also failed to identifying plaintiff's knee and ankle issues as impairments in a memorandum he submitted to the ALJ on plaintiff's behalf. *Id*. at 289 (memorandum submitted by counsel and identifying plaintiff's severe impairments as memory loss, right shoulder pain, mild arthrosis of the acromioclavicular joint, depression, anxiety, urinary incontinence, headaches, and ear ringing, and non-severe impairments as hypertension, sleep apnea, and GERD). Thus, the ALJ was not required to explicitly discuss the medical evidence related to plaintiff's knee pain and ankle sprain.

/////

Lastly, plaintiff argues that the ALJ's RFC determination failed to account for symptoms caused by her shoulder issues. She contends that notwithstanding the finding that her shoulder impairments were non-severe, the ALJ still was required to consider the impact her subjective pain would have had on her ability to work. ECF No. 18 at 18. The ALJ, however, concluded that plaintiff's subjective complaints were not fully credible, a finding that plaintiff does not challenge. Furthermore, the ALJ specifically concluded that plaintiff's shoulder "impairment does not cause any functional limitations in plaintiff's ability to work." AR 13.

Accordingly, the ALJ did not err in assessing plaintiff's RFC.

IV. Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor and close the case.

DATED: September 18, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE